IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SORAYA MALEK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT )<br>OF STATE, et al., )<br>)<br>Defendants. ) | Case No. 23-cv-3261 |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants'[1] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.

I.  **BACKGROUND**

Soraya Malek is a United States Citizen who submitted an I-130 relative visa petition for her son, Amirhossein Shokrani, who is a citizen and resident of Iran. (Doc. 1 at 3). On May 28, 2015, Malek filed the petition with the U.S. Citizenship and Immigration Services (USCIS). (*Id.* at 4). On January 9, 2020, the USCIS approved the petition and sent the case to the National Visa Center (NVC), a part of the U.S. Department of State for visa processing. (*Id.*). The NVC completed its processing of the case and sent it to the U.S. Embassy in Abu Dhabi, United Arab Emirates, for an interview. (*Id.*). Since that time, the

---

[1] The Defendants are: the United States Department of State; the U.S. Embassy in Abu Dhabi, United Arab Emirates; Anthony Blinken, the United States Secretary of State; and Erick Gaudiosi, the Chargé d'Affaires at the U.S. Embassy in Abu Dhabi, United Arab Emirates.

Department of State has not conducted Shokrani's visa interview. (*Id.*). Malek has contacted the consulate multiple times, but those efforts have not been fruitful. (*Id.*).

Malek alleges that Defendants are intentionally delaying scheduling an interview based on the Controlled Application Review and Resolution Program (CARRP). (*Id.* at 5). The CARRP is an internal Department of Homeland Security (DHS) policy which intentionally delays the resolution of visa applications based on potential security concerns. (*Id.*). Malek alleges that the CARRP flags applicants as national security concerns based on "innocuous activity and associations, and characteristics such as national origin." (*Id.* at 6). She states that "USCIS data reveals that between FY2008 and FY2012, more than 19,000 people from twenty-one Muslim-majority countries or regions were subjected to CARRP." (*Id.*).

On August 24, 2023, Soraya Malek filed a two-count Complaint against Defendants based on a delay in processing her son's visa petition. (*Id.*). In Count I, Malek alleges that the process used to process her son's application violates the Administrative Procedures Act (APA) based on the unreasonable delay. (*Id.* at 4-6). In Count II, Malek alleges that Defendants violated her Fifth Amendment due process rights because of their failure to provide a reasonable and just framework of adjudication for the petition. (*Id.* at 6-7).

On November 9, 2023, Defendants filed their Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction. (Doc. 5). In the Motion, Defendants argue Malek has failed to demonstrate that there is a mandatory, non-discretionary duty to schedule her son for an interview, which they argue precludes Malek from proceeding under the APA.

(Doc. 6 at 4-6). In support of their argument, Defendants attach a Declaration of Samuel W. McDonald, the Attorney-Advisor for the U.S. Department of State. (Doc. 6, Ex. 1). McDonald's Declaration provides a timeline of Malek's I-130 petition. (*Id.*). Defendants also argue that Malek's Complaint should be dismissed because the delay in scheduling her son's visa interview has not been unreasonable. (*Id.* at 7-11). Finally, Defendants argue that the CARRP is not a Department of State policy, so it did not apply to her son. (*Id.* at 11-13). On November 22, 2023, Malek filed her response, arguing Defendants do have a clear, non-discretionary duty to schedule an interview on the visa application in a timely manner, and that Defendants did not apply the correct 12(b)(6) standard. (Doc. 8).

## II.  DISCUSSION

### A. Legal Standard

Defendants move to dismiss the Complaint under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter in the complaint. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588-89. When considering a Rule 12(b)(1) motion where the complaint is formally

sufficient but the defendant contends there is no subject-matter jurisdiction, a court can look beyond the complaint and consider evidence submitted by the parties, without converting the motion to one for summary judgment. *Taylor v. McCamet*, 875 F.3d 849, 853 (7th Cir. 2017), citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). "If the Court dismisses Plaintiff's Complaint for lack of subject matter jurisdiction, the accompanying Rule 12(b)(6) defenses become moot and need not be addressed." *Barlow-Johnson v. Center for Youth and Family Solutions*, U.S. Dist. LEXIS 159183, 2023 WL 5826966, at *1 (C.D. Ill. Sept. 8, 2023) (citation omitted).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true, and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Jurisdiction

The APA requires that agencies, such as the Department of State, "conclude" matters presented to them "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time." 5 U.S.C. § 555(b). When an agency fails to comply with this requirement, the APA provides for judicial review of an agency decision that is "unreasonably delayed," and instructs courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the APA prohibits judicial review of agency action if: (1) "statutes preclude judicial review;" or (2) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). An unreasonable delay claim under § 706(1) also requires an agency action that is mandatory because "[a] delay cannot be unreasonable with respect to action that is not required." *Norton*, 542 U.S. at 63 n.1.

Under the Immigration and Nationality Act ("INA"), an alien must obtain a visa before entering and permanently residing in the United States. 8 U.S.C. § 1181(a). The INA created a special visa-application process for aliens sponsored by "immediate relatives" in the United States. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a). Under this process, the citizen-relative first petitions on behalf of the alien, asking to have the alien classified as an immediate relative. 8 U.S.C. §§ 1151(f), 1154(a)(1). To do this, the United States citizen or lawful permanent resident seeking to sponsor their foreign adult child for an immigrant visa must file a Form I-130 with USCIS, which is under the purview of the

DHS. *See* 8 C.F.R. § 204.1(a)(1). If USCIS approves the Form I-130, USCIS sends the form to the NVC, which is under the purview of the Department of State—not the DHS. *See* 8 C.F.R. § 204.2(d)(3). Once the NVC receives all of the required documents, the NVC determines the petition to be "documentarily complete," and the foreign citizen child can be scheduled for an appointment for an interview to make a visa petition before a consular officer. *See* 22 C.F.R. § 42.67(a)(1), (a)(3). The NVC schedules appointments in the chronological order of the documentarily complete cases. *See* 9 FAM 504.4-6a. The U.S. embassy or consulate determines the availability of an appointment. *See id.*

The Code of Federal Regulations defines "[m]ake or file an application for a visa" as "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on Form DS-230 or Form DS-260 and in all supporting documents." 22 C.F.R. § 40.1(l). "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa . . . or . . . discontinue granting the visa." 22 C.F.R. § 42.81. Taken together, these provisions provide that a visa application has not been "properly completed and executed" until an applicant has "personally appear[ed] before a consular officer." 22 C.F.R. § 40.1(l).

Based on this language, Section 42.81 does not impose a duty for the Department of State to conduct a consular interview from a person who has filed a visa petition. Instead, the regulation's duty is expressly limited to after the interview has already taken place. *See* 22 C.F.R. § 42.81.

Additionally, none of the authorities which Malek relies on support her position that the Department of State has a duty to act on visa petitions. Most of the cases cited to by Malek involve delays in processing visa applications. *See Iddir v. INS*, 301 F.3d 492, 500 (7th Cir. 2002) ("The relevant statutes and regulations confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time."); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 657 (N.D. Tex. Feb. 14, 2005) ("The court has already determined that respondents have a clear duty to process petitioner's application for naturalization within a reasonable time."); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (noting "[a] consular office is required by law to act on visa applications" which it defined as "when a visa application has been properly completed and executed before a consular officer in accordance with the provision of INA and the implementing regulations, the consular officer shall either issue or refuse the visa."). The remaining cases involve applications for adjustment of status, which involve a completely different application process. *Elmalky v. Upchurch*, 2007 U.S. Dist. LEXIS 22353 at *6 (N.D. Tex. Mar. 28, 2007); *Villa v. United States Dep't of Homeland Sec.*, 607 F. Supp. 2d 359 (N.D.N.Y. Apr. 6, 2009). Malek does not point to any cases that support her position that the Department of State has a nondiscretionary duty to schedule a consular interview or issue a ruling on a Petition for Alien Relative, as opposed to a visa application.

Instead, several courts in this Circuit have determined that there is no statutory or regulatory authority which sets forth a clear and non-discretionary duty to schedule a visa interview. In *Prince v. Blinken*, 2023 U.S. Dist. LEXIS 155143 (N.D. Ind. Aug. 31, 2023), a U.S. citizen petitioned for writ of mandamus and brought APA claims against the U.S.

Department of State alleging an unreasonable delay in adjudication on the immigrant visa application she filed for her husband in Pakistan. Specifically, the plaintiff and her husband awaited the scheduling of an interview, as Plaintiff does here. 2023 U.S. Dist. LEXIS 155143, at *3. The court determined there was not a clear, mandatory duty to schedule visa interviews. 2023 U.S. Dist. LEXIS 155143, at *7. "The State Department considers the consular interview as the point at which an application for a visa is made.... and after the interview, the consular officer must issue the visa or refuse the application." *Id.* at *3-4. (internal citations omitted). The court found it significant that the Secretary was responsible for 230 U.S. posts worldwide, and that allocating the resources at a specific post is "a discretionary policy decision that relies on the expertise and judgment of the Secretary and the chief of mission." *Id.* at *8. Because the scheduling of visa petition interviews is a discretionary function of the Department of State, the court found the plaintiffs were unable to establish a clear and nondiscretionary duty that required such an interview to be granted by that point. *Id.*

Similarly, in *Khan v. Bitter*, 2023 U.S. Dist. LEXIS 174014 (N.D. Ill. Sept. 28, 2023), the court likewise held that the consular office does not have a clear duty to schedule a visa interview, so the court lacked jurisdiction to hear the claim under the APA. The court reasoned, "8 U.S.C. § 1202(b) does not create this duty because as a technical matter, regulations consider a 'visa application' to be made or filed only after the interview itself, and the duty [to review and adjudicate the application] is invoked only after the interview." 2023 U.S. Dist. LEXIS 174014, at *9.

In sum, the Department of State does not have a nondiscretionary duty to schedule a consular interview within a specific timeframe. Congress gave the Secretary of State broad discretion to "administ[er] and [] enforce[]" the Immigration and Nationality Act, 8 U.S.C. § 1104, and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of State." 22 U.S.C. § 2651a. Congress also gave each Chief of Mission to a foreign country broad discretion to oversee U.S. government operations in that country. 22 U.S.C. § 3927. Part of that discretionary function is the ability to schedule interviews for visa applications based on the resources of a particular post. Therefore, the Court lacks subject matter jurisdiction over the APA claim. 5 U.S.C. § 701(a)(1)-(2). The Court declines to address Defendants' other arguments for dismissing Count I based on a failure to state a claim under Rule 12(b)(6).

## C. Due Process Claim

Malek also alleges her Fifth Amendment rights were violated because Defendants failed to "provide a reasonable and just framework of adjudication in accordance with the applicable law" which has caused her family to be separated. The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has interpreted the Due Process Clauses of the Fifth Amendment "to include a substantive component, which forbids the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). "[N]arrow tailoring is required only when fundamental rights are involved," whereas "[t]he impairment of a

lesser interest ... demands no more than a 'reasonable fit' between governmental purpose ... and the means chosen to advance" it. *Id.* at 305.

Malek suggests that the right to cohabitate with her son in the United States is an undeniable injury that demands due process protections. "[T]he right to conceive and raise one's children has been deemed an 'essential, basic civil right[s] of man'" and "the interests of parents in their children is 'perhaps the oldest of the fundamental liberty interests recognized by this Court.'" *Yafai v. Pompeo*, 912 F.3d 1018, 1024 (7th Cir. 2019), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (O'Connor, J., plurality opinion). Malek has a constitutionally protected interest in raising her son, but she does not have a constitutionally projected right to have or raise her son in the United States. See *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) ("[T]he generic right to live with family is 'far removed' from the specific right to reside in the United States with non-citizen family members.").

"[A]n unadmitted and nonresident alien... has no right of entry into the United States, and no cause of action to press in furtherance of his claim for admission." *See Kerry v. Din*, 576 U.S. 86, 88 (2015) (Scalia, J., plurality opinion). While it is understandable that Malek would like to have her son's petition processed, she does not have a constitutional right to have her son's visa petition interview scheduled as quickly as she desires. If the "unadmitted and nonresident alien" children do not have a constitutional right of entry, then their parents cannot use their familial relationship with those children to bypass that constitutional restriction by asserting that they have a fundamental right to parent their child in the country of their choosing or the country in which they reside.

But even if Malek has a protected interest, there is no basis for the assertion that she has been deprived of that interest. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). "To have a property interest in a benefit, a person ... must ... have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

As discussed previously, the consulate offices' ability to schedule interviews for visa applications based on the resources of a particular post is a discretionary function. Because the timing of the consular interview is a discretionary act, there is no due process violation when the consulate office does not schedule it within a particular timeframe. Further, the Supreme Court "long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020). As a result, the visa-application procedures cannot violate the Due Process Clause because "[w]hatever the procedure authorized by Congress is, it is due process." *United States ex. Rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). Malek's son has not been denied adjudication of his visa; his visa petition is still pending and will, following an interview before a consular officer, ultimately be adjudicated. Thus, Malek and her son have not been denied any procedural due process right due to the delay of his visa processing.

Finally, as it relates to the alleged procedural due process violation caused by CARRP, Malek alleges that CARRP is a policy of the DHS, not the Department of State. Because the DHS is not a party to this suit and because the State Department manages visa applications, CARRP does not apply to Malek and neither she nor her son have been affected by it. As the Complaint is currently framed, Malek has not alleged an injury-in-fact, and thus does not have standing to pursue this claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

### III. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is GRANTED without prejudice.

ENTER: April 26, 2024

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE